**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAYDEN AI TECHNOLOGIES, INC.,<br><br>    Plaintiff,<br><br>        v.<br><br>SAFE FLEET HOLDINGS LLC and SAFE FLEET ACQUISITION CORP.,<br><br>    Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Hayden AI Technologies, Inc. ("Hayden AI" or "Plaintiff"), by and through its undersigned attorneys, files this Complaint against Defendants, Safe Fleet Holdings LLC and Safe Fleet Acquisition Corp. (collectively, "Safe Fleet"), and alleges, upon knowledge with respect to its acts and upon information and belief as to other matters, as follows:

**Nature of the Action**

1.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including specifically 35 U.S.C. § 271, based on Safe Fleet's infringement of two U.S. Patents that are owned by Hayden AI.  These two "Patents-in-Suit" are U.S. Patent Nos. 11,003,919 (the "'919 Patent") and 11,322,017 (the "'017 Patent").

2.      Hayden AI is a leader in artificial intelligence (AI) and machine learning technologies and the owner of the Patents-in-Suit.  Bringing together experts in AI, computer vision, data science, transportation and government technology, Hayden AI designs and deploys solutions to real-world problems facing governments and businesses.

3.      Through sustained, substantial investment in research and development, Hayden AI has developed an industry-leading mobile perception platform that enhances safety, efficiency

and sustainability.  Among other things, Hayden AI's platform can be used to help municipalities maintain intended access to, and safety of, bus lanes and bus stops by automating the identification and processing of traffic violations.  The efficacy of Hayden AI's platform has helped it become the leading provider of mobile automated bus lane and bus stop enforcement systems in the United States.

4.      Safe Fleet's products and services, including Safe Fleet's "ClearLane" automated bus lane enforcement system, infringe one or more claims of each of the Patents-in-Suit.  Safe Fleet's infringing activity includes, but is not limited to, practicing a method for detecting traffic violations using mobile detection, practicing a method for managing or administering traffic rules or lane restrictions using multiple map layers with traffic management semantics, and/or offering for sale and providing physical devices for mounting on buses to facilitate the same.

5.      Plaintiff brings this action in order that this Court enjoin Defendants' infringement of the '919 and '017 Patents and otherwise relieve and redress the injury to Plaintiff caused by Defendants' infringement.

**The Parties and Related Entities**

6.      Plaintiff Hayden AI Technologies, Inc., is Delaware corporation with its principal place of business at 484 9th Street, in Oakland, California.

7.      Defendant Safe Fleet Holdings LLC is a Delaware limited liability company with a principal place of business at 6800 East 163rd Street, in Belton, Missouri.

8.      Defendant Safe Fleet Acquisition Corporation is a Delaware corporation with a principal place of business at 6800 East 163rd Street, in Belton, Missouri.

9.      Rear View Safety, Inc. (hereafter, "RVS") is a wholly-owned affiliate of Safe Fleet with a principal place of business at 1797 Atlantic Avenue, in Brooklyn, New York, and was acquired by Safe Fleet in or about May 2016.

10.    RVS holds itself out as one among Safe Fleet's portfolio of "brands" focused on improving operator, pedestrian, and driver safety.

11.    Safe Fleet holds RVS out as among Safe Fleet's 14 "locations" across the United States and Canada, out of which Safe Fleet's brands and products are operated and manufactured.

## Jurisdiction and Venue

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1338(a) because the claims herein arise under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. § 271.

13.    This Court has personal jurisdiction over Safe Fleet because Safe Fleet regularly transacts business and contracts to supply goods and services, and has committed acts of infringement, within New York State and within this District through, for example, offering to sell and provide products and services that infringe the Patents-in-Suit.  Safe Fleet derives and/or imminently will derive substantial revenue from products and/or services supplied in New York and in this District and has purposefully established substantial, systematic, and continuous contacts within this District such that it should reasonably expect to be sued in a court in this District.

14.    At least for the aforementioned conduct, and/or by and through its "location" at, and doing business as, RVS, Safe Fleet is "at home" in this District.

15.    Venue in this District is proper under 28 U.S.C. §§ 1391(b), (c) and 1400(b).  Safe Fleet offers products and services and conducts business in the Eastern District of New York.  Safe Fleet has committed, and/or imminently will commit, acts within this judicial district, giving rise to this action, including one or more acts of making, selling, using, importing and/or

offering for sale infringing products, systems, and methods to existing or prospective customers in this District.

16.     At least by and through its "location" at, and doing business as, RVS, Safe Fleet has a regular and established place of business in this District.

### Hayden AI's Innovative Technology

17.     Hayden AI was founded in 2019, with the mission of developing artificial intelligence and machine learning technologies to revolutionize how governments and businesses solve, *inter alia*, transit-related problems which theretofore existed but were, with previously available technology, difficult or impossible to fix.

18.     Presently the centerpiece of Hayden AI's offering is its mobile perception platform, which accurately identifies the precise location of vehicles and other objects utilizing AI technology and cameras mounted inside a moving vehicle.  Though the mobile perception platform has many applications (*e.g.*, school buses, garbage trucks, street sanitation vehicles), pertinent to the instant action is the use of Hayden AI's technology to automate transit bus (*i.e.*, city bus) lane and transit bus stop, and other no-parking enforcement (the "Hayden Automated Bus Lane Enforcement System," or, and hereafter, the "Hayden ABLE System").

19.     For years, public transit agencies have struggled with challenges caused by motor vehicles impermissibly parking in bus stops or restricted, bus-only lanes; the implications can be far reaching.

20.     Obstructions in bus stops or lanes slow down buses, cause delays, and make it harder for transit buses to maintain an "on-time" schedule.  Over time, a pattern of regular delays can decrease customer satisfaction and, ultimately, ridership.

21.     Obstruction of bus stops or lanes can pose serious safety hazards.  An obstructed bus stop may, for example, prevent a passenger with a disability from accessing a bus at all.  In

major metropolitan areas, the sheer volume of bus stops and bus lanes makes consistent, comprehensive, human patrols unworkable.

22.     To resolve the long-felt but unmet need to improve enforcement of traffic ordinances governing bus stops and bus lanes, Hayden AI leveraged its expertise to devise an automated solution:  using its AI-powered camera system to automatically capture and enforce these violations, while safeguarding the privacy of members of the community.

23.     In lieu of relying on police or municipal parking enforcement officers to detect and notice violations, Hayden AI's novel system relies on the power of the transit buses themselves.

24.     The Hayden ABLE System begins with a mobile-AI based system, including a context camera, that is mounted on the inside of a bus's windshield.

25.     Using patented software and AI tools, the onboard component of the Hayden ABLE System captures and detects potential traffic violations in dedicated bus lanes and bus stops.  The detection of these potential violations is based on a series of "traffic rules" learned by the system.  Traffic rules can be pre-programmed and can also be updated in real time, and remotely deployed, to each roadside capture device either using AI algorithms or manually (via a map editor, raw data or heat maps of traffic violations).

26.     Once a potential violation is recorded and detected, the Hayden ABLE System further extracts license plate details (*e.g.*, number, state) from the image associated with the potential traffic violation.  The onboard processor then assembles an evidence package.

27.     Each evidence package generated by the Hayden ABLE System is transferred to Hayden AI's cloud server for further processing.  Importantly, the *only* data sent are the evidence packages, and these data are so sent using government-grade encryption.  This method of

transmission reduces bandwidth and mitigates security and privacy concerns associated with automated data collection.

28.    Once processed by the evidence cloud server within the Hayden ABLE System, the fully auditable evidence package is transmitted to the relevant enforcement officer or agency for a particular municipality for review.

29.    If approved by the enforcement officer, the violation or warning notice can be issued to the driver that obstructed the bus lane or bus stop.

30.    In addition to providing enforcement capabilities, the Hayden ABLE System is also capable of analyzing both real-time and historic data feeds, while its mapping capabilities provide insights into traffic operations and can help stakeholders make data-informed decisions to improve bus service and bus stop safety.

31.    The various inventions embodied by the Hayden ABLE System, including the innovative system described above, are claimed in several U.S. Patents or pending applications, including the Patents-in-Suit.

## Safe Fleet's Infringing System

32.    Safe Fleet was formed in 2013, by merger of two fleet safety equipment providers: ROM and SMI. On information and belief, Safe Fleet's business now comprises some 23 different brands, including RVS, which offer products ranging from "firefighting, fire protection & water flow equipment innovation" to "custom safety mirrors for buses and fire apparatus." *See* SAFE FLEET, Brands, accessible at https://www.safefleet.net/brands/.

33.    Unlike Hayden AI's, Safe Fleet's business historically has not been focused on AI, computer vision, or cutting-edge technologies. Rather, Safe Fleet is a conglomeration of brands and products directed to traditional products for fleet vehicles, such as basic cameras, lighting products, roof hatches, and overhead luggage racks.

34.     On information and belief, recognizing the potential value for a product like that developed by Hayden AI, Safe Fleet sought to manufacture and sell a product like the patented Hayden ABLE System that could directly compete with Hayden AI for automated bus lane and bus stop enforcement system contracts awarded by municipal transit agencies.

35.     On information and belief, rather than undertaking independent research and development to develop a competing product, Safe Fleet freeloaded on the significant investment by, and innovative work of technologists and engineers at Hayden AI to reverse engineer a system product, which it markets as "ClearLane."

36.     Publicly available information, including marketing material prepared, on information and belief, by or on behalf of Safe Fleet, shows that the ClearLane product has an identical system architecture to that embodied by the patented Hayden ABLE System and claimed in the Patents-in-Suit.



(Excerpted from https://www.safefleet.net/document/safe-fleet-clearlane/.)

37.    Publicly available information also depicts the Safe Fleet system using a semantic map-driven traffic rules system, as claimed in the Patents-in-Suit and embodied by the patented Hayden ABLE System.



(Excerpted from https://www.youtube.com/watch?v=oxV2qaIiTwY, at 1:16.)

38.    By its unauthorized manufacture, offer, and sale of ClearLane, Safe Fleet acts in order to reap the benefits of Hayden AI's investment in research and development while itself incurring substantially none of the attendant costs.  Safe Fleet's infringement, therefore, allows it to position ClearLane into direct competition with Hayden AI's patented system, offering a copycat product at a lower price.  Safe Fleet's infringement is the kind of innovation-stifling competition that the patent laws were designed to prevent.

### The '919 Patent

39.    The '919 Patent, entitled "Systems and Methods for Detecting Traffic Violations Using Mobile Detection Devices," was issued by the United States Patent and Trademark Office on May 11, 2021.  The '919 Patent matured from U.S. Patent Appl. No. 17/072,816, filed on October 16, 2020.  A true and correct copy of the '919 Patent is attached hereto as **Exhibit A**.

40.    Plaintiff Hayden AI Technologies, Inc. is the assignee of the '919 Patent.

41.    Hayden AI owns all right, title, and interest in and to the '919 Patent, including the right to exclude others and to enforce and recover damages for past and future infringement.

42.    The '919 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

43.    The '919 Patent is generally directed to systems and methods for detecting traffic violations involving a vehicle and a restricted road area, using mobile detection devices and the construction of semantic annotated maps using data and information received from the mobile detection devices.

44.    Independent Claim 1 of the '919 Patent is exemplary of its claims and is to:

A method for detecting a traffic violation, comprising:

capturing a first video of a vehicle and a restricted road area using one or more video image sensors of a first edge device, wherein the first video comprises a first frame captured at a first point in time;

determining a location of the vehicle using in part a first positioning data obtained from a first positioning unit of the first edge device;

identifying, using one or more processors of the first edge device, the vehicle, the restricted road area, a first set of vehicle attributes of the vehicle, and a first alphanumeric string representing a license plate number of the vehicle from frames of the first video by applying a plurality of functions from a computer vision library to the first video and passing at least some [of] the frames of the first video including the first frame to a deep learning model running on the first edge device;

bounding, using the one or more processors of the first edge device, the vehicle and the restricted road area in the first frame in a plurality of first bounding boxes;

detecting, at the first edge device, a first potential traffic violation at the first point in time based in part on overlap of the plurality of the first bounding boxes and transmitting at least the first alphanumeric string, the first set of vehicle attributes, and the first positioning data from the first edge device to the server;

capturing a second video of the vehicle and the restricted road area using one or more video image sensors of a second edge

device, wherein the second video comprises a second frame captured at a second point in time after the first point in time;

identifying, using one or more processors of the second edge device, the vehicle, the restricted road area, a second set of vehicle attributes of the vehicle, and a second alphanumeric string representing the license plate number of the vehicle from frames of the second video by applying a plurality of functions from a computer vision library to the second video and passing at least some of the frames of the second video including the second frame to a deep learning model running on the second edge device;

bounding, using the one or more processors of the second edge device, the vehicle and the restricted road area in the second frame in a plurality of second bounding boxes;

detecting, at the second edge device, a second potential traffic violation at the second point in time based in part on overlap of the plurality of second bounding boxes and transmitting at least the second alphanumeric string, the second set of vehicle attributes, and a second positioning data obtained from a second positioning unit of the second edge device from the second edge device to the server; and

determining, at the server, that a traffic violation has occurred based on an elapsed time between the second point in time and the first point in time and based on a comparison of the first alphanumeric string with the second alphanumeric string, the first set of vehicle attributes with the second set of vehicle attributes, and the first positioning data with the second positioning data.

**Safe Fleet's Infringement of the '919 Patent**

45.    Safe Fleet infringes, or imminently will infringe, at least Claim 1 of the '919

Patent.

46.    Use of the Safe Fleet ClearLane product practices a method for detecting a traffic

violation, such as "obstruct[ing] bus lanes during enforcement periods."

(Excerpted from https://www.safefleet.net/document/safe-fleet-clearlane/.)

47.    Use of the Safe Fleet ClearLane product practices a method comprising determining a location of the vehicle using in part a positioning data obtained from a positioning unit of the edge device.  The ClearLane system "relies on . . . a GPS receiver", and "advanced algorithms process business rules against vehicle" based on the "GPS receiver."



(Excerpted from https://www.safefleet.net/document/safe-fleet-clearlane/ (annotated).)

48.    Use of the Safe Fleet ClearLane product practices a method comprising identifying, using one or more processors of the edge device, the vehicle, the restricted road area, a set of vehicle attributes of the vehicle, and a first alphanumeric string representing a license plate number of the vehicle from frames of the video by applying a plurality of functions from a computer vision library to the video and passing at least some [of] the frames of the video including the frame to a deep learning model running on the edge device.  The ClearLane system's "[a]dvanced algorithms determine the position and location of the violating vehicle and the length of time it has been blocking the bus lane" and vehicle identification includes "license plate details."



(Excerpted from https://www.safefleet.net/document/safe-fleet-clearlane/.)

49.     Use of the Safe Fleet ClearLane product practices a method comprising bounding, using the one or more processors of the edge device, the vehicle and the restricted road area in the frame in a plurality of bounding boxes.



(Excerpted from https://www.safefleet.net/document/safe-fleet-clearlane/.)

50.     Use of the Safe Fleet ClearLane product practices a method comprising detecting, at the edge device, a potential traffic violation at a point in time based in part on overlap of the plurality of the bounding boxes and transmitting at least the alphanumeric string, the set of

vehicle attributes, and the positioning data from the edge device to the server.  The ClearLane system sends an "evidence package" for "review and ticket processing" at a server.



(Excerpted from https://www.youtube.com/watch?v=oxV2qaIiTwY, at 1:10.)



(Excerpted from https://www.safefleet.net/document/safe-fleet-clearlane/.)

51.     Use of the Safe Fleet ClearLane product practices a method comprising repeating these method steps using a second edge device and second captured video at a second point in time.

52.     Use of the Safe Fleet ClearLane product practices a method comprising determining, at the server, that a traffic violation has occurred based on an elapsed time between the second point in time and the first point in time and based on a comparison of the first

alphanumeric string with the second alphanumeric string, the first set of vehicle attributes with the second set of vehicle attributes, and the first positioning data with the second positioning data.

> Advanced algorithms determine the position and location of the violating vehicle and the length of time it has been blocking the bus lane.

(Excerpted from https://www.safefleet.net/document/safe-fleet-clearlane/ (annotated).)

### The '017 Patent

53.    The '017 Patent, entitled "Systems and Methods for Managing Traffic Rules Using Multiple Mapping Layers with Traffic Management Semantics," was issued by the United States Patent and Trademark Office on May 3, 2022.  The '017 Patent matured from U.S. Appl. No. 17/390,226, filed on July 30, 2021, and claims priority to U.S. Provisional Appl. No. 63/142,903, filed on January 28, 2021.  A true and correct copy of the '017 Patent is attached hereto as **Attachment B**.

54.    Plaintiff Hayden AI Technologies, Inc., is the assignee of the '017 Patent.

55.    Hayden AI owns all right, title, and interest in and to the '017 Patent, including the right to exclude others and to enforce and recover damages for past and future infringement.

56.    The '017 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

57.    The '017 Patent is generally directed to systems and methods for managing or administering traffic rules or lane restrictions using multiple map layers with traffic management semantics.

58.    Independent Claim 1 of the '017 Patent is exemplary of its claims and is to:

A method of managing traffic rules related to traffic enforcement, comprising:

generating or updating a semantic map layer, using one or more processors of a server, based in part on positioning data obtained from one or more edge devices and videos captured by the one or more edge devices, wherein each of the edge devices is coupled to a carrier vehicle and wherein at least part of the videos are captured while the carrier vehicle is in motion;

generating or updating, using the one or more processors of the server, a traffic enforcement layer on top of the semantic map layer, wherein a plurality of traffic rules are saved as part of the traffic enforcement layer; and

generating or updating, using the one or more processors of the server, a traffic insight layer, wherein the traffic insight layer is configured to adjust or provide a suggestion to adjust at least one of the traffic rules of the traffic enforcement layer based in part on traffic violations and traffic conditions determined by the one or more edge devices or the server.

**Safe Fleet's Infringement of the '017 Patent**

59.    Safe Fleet infringes, or imminently will infringe, at least Claim 1 of the '017 Patent.

60.    Use of Safe Fleet's ClearLane product practices a method of managing traffic rules related to traffic enforcement.  According to Safe Fleet, the ClearLane system helps "build roadways and traffic laws [*i.e.*, rules] that provide the best possible outcomes."

The Safe Fleet ClearLane system also features an intelligent back end to provide agencies with additional insight and benefits like:

■ **streamlining** hotspots and pressure points and helping build roadways and traffic laws that provide the best possible outcomes.

(Excerpted from https://www.safefleet.net/document/able-clearlane-ebook/.)

15

61.     Use of the Safe Fleet ClearLane product practices a method comprising generating or updating a semantic map layer, using one or more processors of a server, based in part on positioning data obtained from one or more edge devices and videos captured by the one or more edge devices, wherein each of the edge devices is coupled to a carrier vehicle and wherein at least part of the videos are captured while the carrier vehicle is in motion.  The ClearLane back end allows users to "view[] their buses as they navigate dedicated bus lanes through the day on a real-time, live streaming map."  The system includes both positioning devices and video capture devices onboard the bus.



(Excerpted from https://www.safefleet.net/document/able-clearlane-ebook/.)

62.     Use of the Safe Fleet ClearLane product practices a method comprising generating or updating, using the one or more processors of the server, a traffic enforcement layer on top of the semantic map layer, wherein a plurality of traffic rules are saved as part of the traffic enforcement layer.



(Excerpted from https://www.youtube.com/watch?v=oxV2qaIiTwY, at 1:16.)

63.    Use of the Safe Fleet ClearLane product practices a method comprising generating or updating, using the one or more processors of the server, a traffic insight layer, wherein the traffic insight layer is configured to adjust or provide a suggestion to adjust at least one of the traffic rules of the traffic enforcement layer based in part on traffic violations and traffic conditions determined by the one or more edge devices or the server.  The ClearLane system back end provides "additional insights" including "streamlining hotspots and pressure points and helping build roadways and traffic laws that provide the best possible outcomes."

> The Safe Fleet ClearLane system also features an intelligent back end to provide agencies with additional insight and benefits like:
>
> - **streamlining** hotspots and pressure points and helping build roadways and traffic laws that provide the best possible outcomes.
> - **viewing their buses** as they navigate dedicated bus lanes throughout the day on a real-time, live-streaming map and then plan for additional buses, routes, or route changes.

(Excerpted from https://www.safefleet.net/document/able-clearlane-ebook/.)

## COUNT I:  Infringement of U.S. Patent No. 11,003,919

64.     Plaintiff restates, realleges and incorporates each of the preceding paragraphs as if fully set forth herein.

65.     In violation of 35 U.S.C. § 271(a), Safe Fleet has directly infringed and continues to directly infringe, both literally and/or under the doctrine of equivalents, the '919 Patent by making, using, offering for sale, selling and/or importing devices and/or systems in the United States, including within this judicial district, that infringe at least claim 1 of the '919 Patent without license from Hayden AI.

66.     In violation of 35 U.S.C. § 271(b) and/or (c), Safe Fleet has induced its customers and continues to induce its customers to directly infringe, and/or has contributed and continues to contribute to its customers' infringement of, both literally and/or under the doctrine of equivalents, the '919 Patent by taking actions that include, but are not limited to advertising its products and services and their infringing uses, including on Safe Fleet's website; establishing distribution channels for these products in the United States; drafting, distributing, or making available product specifications, instructions, or user manuals for the products to Safe Fleet's customers and prospective customers; providing technical support or other services for the products to Safe Fleet's customers and prospective customers; and/or offering for sale component devices for use as part of its ClearLane product.

67.     Safe Fleet has had actual knowledge of the '919 Patent since at least the filing date of this Complaint.  On information and belief, Safe Fleet had actual or constructive knowledge and notice of the '919 Patent prior to the filing of this Complaint because Safe Fleet and Hayden AI are competitors in the automated bus lane enforcement solutions market and are competing, or imminently will compete, head-to-head with Hayden AI in bids for contracts with

governments or quasi-governmental transit agencies.  On information and belief, Safe Fleet knew, should have known, or was willfully blind as to the existence of the '919 Patent.

68.    As a result of Safe Fleet's infringement of the '919 Patent, Hayden AI has been damaged and will continue to suffer damages in the future.  Hayden AI is entitled to recover for damages, including in the form of lost profits and/or a reasonable royalty sustained as a result of Safe Fleet's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

69.    Hayden AI will be substantially and irreparably damaged and harmed if Safe Fleet's infringement of the '919 Patent is not enjoined, including because Safe Fleet and Hayden AI are direct competitors in government contract bids related to automated bus lane enforcement technologies.

70.    On information and belief, Hayden AI alleges that Safe Fleet's infringement of the '919 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and of attorney's fees to Hayden AI pursuant to 35 U.S.C. §§ 284–285.

## COUNT II:  Infringement of U.S. Patent No. 11,322,017

71.    Plaintiff restates, realleges and incorporates each of the preceding paragraphs as if fully set forth herein.

72.    In violation of 35 U.S.C. § 271(a), Safe Fleet has directly infringed and continues to directly infringe, both literally and/or under the doctrine of equivalents, the '017 Patent by making, using, offering for sale, selling and/or importing devices and/or systems in the United States, including within this judicial district, that infringe at least claim 1 of the '017 Patent without license from Hayden AI.

73.     In violation of 35 U.S.C. § 271(b) and/or (c), Safe Fleet has induced its customers and continues to induce its customers to directly infringe, and/or has contributed and continues to contribute to its customers' infringement of, both literally and/or under the doctrine of equivalents, the '017 Patent by taking actions that include, but are not limited to advertising its products and services and their infringing uses, including on Safe Fleet's website; establishing distribution channels for these products in the United States; drafting, distributing, or making available product specifications, instructions, or user manuals for the products to Safe Fleet's customers and prospective customers; providing technical support or other services for the products to Safe Fleet's customers and prospective customers; and/or offering for sale component devices for use as part of its ClearLane product.

74.     Safe Fleet has had actual knowledge of the '017 Patent since at least the filing date of this Complaint.  On information and belief, Safe Fleet had actual or constructive knowledge and notice of the '017 Patent prior to the filing of this Complaint because Safe Fleet and Hayden AI are competitors in the automated bus lane enforcement solutions market and are competing, or imminently will compete, head-to-head with Hayden AI in bids for contracts with governments or quasi-governmental transit agencies.  On information and belief, Safe Fleet knew, should have known, or was willfully blind as to the existence of the '017 Patent.

75.     As a result of Safe Fleet's infringement of the '017 Patent, Hayden AI has been damaged and will continue to suffer damages in the future.  Hayden AI is entitled to recover for damages, including in the form of lost profits and/or a reasonable royalty sustained as a result of Safe Fleet's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

76.     Hayden AI will be substantially and irreparably damaged and harmed if Safe Fleet's infringement of the '017 Patent is not enjoined, including because Safe Fleet and Hayden

AI are direct competitors in government contract bids related to automated bus lane enforcement technologies.

77.    On information and belief, Hayden AI alleges that Safe Fleet's infringement of the '017 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and of attorney's fees to Hayden AI pursuant to 35 U.S.C. §§ 284–285.

### Jury Demand

Hayden AI demands a trial by jury on all issues triable as such.

### Prayer for Relief

WHEREFORE, Hayden AI respectfully requests that this Court enter judgment in its favor and against Safe Fleet as follows:

A.    That Safe Fleet has infringed, and continues to infringe, either literally and/or under the doctrine of equivalents, each of the Patents-in-Suit;

B.    That Safe Fleet and its respective officers, agents, employees, and those acting in privity with them, be permanently enjoined from further direct and/or indirect infringement of the Patents-in-Suit;

C.    That Safe Fleet pay damages adequate to compensate Hayden AI for its infringement, together with interest and costs, arising out of (i) Safe Fleet's past infringement of the Patents-in-Suit; (ii) Safe Fleet's ongoing infringement of the Patents-in-Suit; and (iii) enhanced damages pursuant to 35 U.S.C. § 284;

D.    That Safe Fleet be ordered to pay pre-judgment and post-judgment interest on the damages asserted;

E.      That Safe Fleet be ordered to pay supplemental damages to Hayden AI, including interest, with an accounting, as needed, of all infringements and/or damages not presented at trial;

F.      That Safe Fleet's infringement is willful and that the damages awarded to Hayden AI should be enhanced up to three times the actual damages awarded;

G.      That Hayden AI be awarded damages for its costs, disbursements, expert witness fees, and attorneys' fees and costs incurred in prosecuting this action, with interest, including damages for an exceptional case pursuant to 35 U.S.C. § 285 and as otherwise provided by law;

H.      An order requiring Safe Fleet to pay an ongoing royalty in an amount to be determined for any continued infringement after the date judgment is entered; and

I.      An award to Hayden AI of such further relief at law or in equity as this Court deems just and proper.

Dated: May 8, 2023
     New York, NY

*/s/ James S. Trainor*
James S. Trainor
Nicholas J. Klenow
Retley G. Locke, Jr.
FENWICK & WEST LLP
902 Broadway, Floor 18
New York, NY 10010
Telephone:  (212) 430-2600
Facsimile:  (650) 938-5200
jtrainor@fenwick.com
nklenow@fenwick.com
rlocke@fenwick.com

*Attorneys for Plaintiff*
*Hayden AI Technologies, Inc.*